UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEVIN DEVON BRIGGS,

        Plaintiff,

v.

UNKNOWN WESTCOMB et al.,

        Defendants.
_____/

Case No. 2:19-cv-105

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's § 1983 claims for failure to state a claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Those claims will be dismissed without prejudice.

**Discussion**

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Michigan. Plaintiff sues LMF Physician Assistant Unknown Westcomb, LMF Corrections Officer Unknown Barber, and LMF Lieutenant Unknown Rondeau.

Plaintiff suffers from diabetes. Plaintiff alleges that on January 19, 2016, he went to LMF healthcare to get his morning insulin dose. The nurse informed him that Defendant Westcomb had reduced his morning, noon, and evening insulin doses. Plaintiff does not elaborate with regard to the extent of the three changes, but he does explain that the morning dose changed from 48 units to 40 units. Plaintiff asked to speak with or see Defendant Westcomb, to no avail. Plaintiff immediately filed a grievance against Westcomb alleging that she was deliberately indifferent to his serious medical needs. On January 25, 2016, perhaps in connection with the grievance, the LMF healthcare supervisor spoke with Westcomb about her actions with respect to Plaintiff's insulin dose change.

The next day, Westcomb allegedly retaliated against Plaintiff by joining Defendant Barber in ambushing Plaintiff. Westcomb verbally attacked Plaintiff and Barber "became physical" in an attempt to provoke Plaintiff. They did not succeed.

Plaintiff sought assistance from Defendant Rondeau, but Rondeau told Plaintiff he was "going to the hole." Plaintiff was taken to segregation. Plaintiff claims that Barber filed a false misconduct report against Plaintiff for Threatening Behavior. He claims that Rondeau filed a false witness statement in support of the misconduct ticket.

Three days later, on January 29, 2016, a hearing officer found Plaintiff not guilty of Threatening Behavior, but guilty of a lesser offense. Plaintiff sought a rehearing, without success, and then judicial review of the decision, but he claims it was wrongfully denied. Plaintiff alleges that he did not pursue administrative grievances for Rondeau's and Barber's false reports because the MDOC does not permit such grievances.

Plaintiff was released from segregation, but lost privileges for 30 days.

Plaintiff claims that he suffered the medical consequences of Defendant Westcomb's deliberate indifference until mid-March of 2016, when a doctor increased Plaintiff's insulin dose.

Plaintiff seeks declaratory relief and more than $300,000.00 in compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

3

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

There is little question that diabetes creates a serious medical need. But, Plaintiff's allegations that Defendant Westcomb was deliberately indifferent to that need fall short. Defendant Westcomb did not deny Plaintiff treatment for his diabetes, she merely changed the dose of his medication. Moreover, she changed the dose after Plaintiff declined to take his prescribed dose for five days straight. (Compl., ECF No. 1, PageID.6.) Several courts have considered and rejected similar claims. *See, e.g., Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) ("Mabry's claim against Dr. Antonini is merely a complaint that he did not order specific tests, or provide specific medications, treatment, or dosages. Such an assertion does not state a constitutional claim of deliberate indifference as to serious medical needs."); *Cameron v. Kentucky*, No. 4:18CV-P72-JHM, 2018 WL 6329752 at *4 (W.D. Ky. Dec. 4, 2018) ("Plaintiff was receiving treatment for his diabetes in the form of regular insulin shots. Plaintiff disagrees with the dosage he received. His allegations concerning his insulin dosage amount to a difference of opinion over the adequacy of the treatment he is receiving. The Court will not second guess the

6

judgment made by the jail's medical staff. *See Westlake*, 537 F. 2d at 860 n.5. Therefore, Plaintiff's allegations concerning the insulin dosage are not sufficient to give rise to a deliberate indifference claim."); *Aaron v. Finkbinder*, 793 F. Supp. 734, 737 (E.D. Mich. 1992) ("Finally, plaintiff has filed suit against Ayer for deliberate indifference to his medical needs by giving plaintiff 50 units of insulin rather than 58 units. . . . A discrepancy of eight units is clearly not grounds for an eighth amendment or section 1983 claim of deliberate indifference. The fact that Ayer provided plaintiff with any insulin shows a lack of indifference."). This Court likewise concludes that the reduction in Plaintiff's insulin dosage does not suffice to show the subjective component necessary to establish deliberate indifference to Plaintiff's serious medical needs, particularly where the reduction followed Plaintiff's own self-imposed, five-day dose reduction. Therefore, Plaintiff has failed to state an Eighth Amendment claim against Defendant Westcomb.

### IV. Retaliation

Plaintiff claims all three Defendants retaliated against him for immediately filing a grievance against Defendant Westcomb. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Thus, Plaintiff has properly alleged the first element of a retaliation claim.

Plaintiff offers three possible adverse actions: (1) Defendant Westcomb's verbal attacks; (2) Defendant Barber's getting "physical;" and (3) the false misconduct report authored by Defendant Barber and supported by Defendant Rondeau. (Compl., ECF No. 1, PageID.6, 8.) Plaintiff does not allege facts regarding Defendant Westcomb's verbal attacks that would support the inference that the attacks might deter a person of ordinary firmness from engaging in protected conduct. The Sixth Circuit has never said that verbal abuse is sufficient to demonstrate adverse action. *Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006); *see also Carney v. Craven,* 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free from verbal abuse . . . and minor threats do not rise to the level of a constitutional violation."); *Hilton v. Mish*, 224 F. Supp. 3d 595, 603 (W.D. Mich. 2016) ("[V]erbal abuse, foul language, and insensitive comments made to or about a plaintiff generally do not constitute adverse action."). Therefore, Plaintiff fails to state a retaliation claim against Defendant Westcomb.

Plaintiff's allegations regarding Barber's "physical" actions on January 26, 2016, are scant. Plaintiff describes the actions as "being physical" and "touching and bumping." (Compl., ECF No. 1, PageID.6-7.) In *Riley v. Kurtz*, 893 F. Supp. 709 (E.D. Mich. 1995), the court recognized that certain physical contact would be so *de minimis* that it simply would not deter protected conduct:

> Certain means of "retaliation" may be so *de minimis* as not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response. Borrowing from *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee-Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033 (1977), *Graham v. Connor*, 490 U.S. 386, 396 (1989), notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Similarly, not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment. By developing a standard of *de minimis* actions, courts can screen out frivolous or non-meritorious claims of retaliation during the *in forma pauperis* complaint review under 28 U.S.C. § 1915 or on a motion for summary judgment.

*Riley*, 893 F. Supp. at 716 n.5; *see also Santiago v. Doom*, No. 3:10CV-P39-H, 2010 WL 2612578 at *7 (W.D. Ky. June 25, 2010) ("Conclusory allegations of an 'assault' do not suffice to state a retaliation claim. An 'assault' that is comprised of merely a push or a shove without corresponding injury of any kind would not deter a person of ordinary firmness.") Plaintiff's allegations of physical contact fall into the *de minimis* category. Plaintiff's allegations do not support an inference that Barber's bumps and touches would deter a person of ordinary firmness from engaging in protected conduct. Therefore, Plaintiff has failed to state a retaliation claim against Barber based on the adverse action of getting physical.

Plaintiff's claim that Defendants Barber and Rondeau pursued a retaliatory misconduct charge against him presents an adverse action that would likely deter a person of ordinary firmness from engaging in protected activity. In *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018), the court determined that the sufficiency of adverse action based on the issuance of a misconduct ticket depends upon the punishment the plaintiff "could have faced and the punishment he ultimately did face." The punishment Plaintiff faced and then received here—the loss of privileges—"is hardly 'inconsequential'—indeed, [such privileges] are all that prisoners really have." *Maben*, 887 F.3d at 267.

Plaintiff's retaliation claim against Barber and Rondeau, however, fails at the third

9

step. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer the actions of Defendant Barber or Rondeau in pursuing a misconduct violation were motivated by any of his protected conduct related to another officer. Plaintiff merely concludes that because he filed a grievance against Westcomb a week earlier, Defendants' actions must have been motivated by the grievance. Plaintiff's allegations do not support an inference that the protected conduct and the adverse action are connected in any way. At best, Plaintiff's allegations show that the protected conduct and the adverse action occurred over a

10

relatively short period of time. The Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). The two events are certainly not so temporally proximate here to support the inference that the latter event was motivated by the former. Accordingly, Plaintiff has failed to state a retaliation claims against Defendants Barber and Rondeau based on the misconduct charge.

## V. Due Process Violations

Plaintiff also suggests that the "false" misconduct charges filed by Barber and supported by Rondeau had the effect of violating his procedural and substantive due process rights. Plaintiff fails to state a procedural due process claim relating to the misconduct charge. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

11

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[2] a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the misconduct proceedings. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Plaintiff also alleges that Defendants violated his substantive due process rights. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

[2] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

Plaintiff's "conscience shocking" conduct allegations amount to little more than the plain vanilla statement that the misconduct charge was "false." Although the hearing officer did not find Plaintiff guilty of threatening behavior, the officer found Plaintiff guilty of a lesser charge and imposed the longest possible "loss of privileges" penalty as a sanction. Based on the result of the hearing, it certainly does not appear that the reduction in charge was the result of some blatant misrepresentation by Defendants. Plaintiff offers no guidance as to the nature of the falsity alleged. Therefore, Plaintiff fails to allege facts that permit an inference that the Defendants' conduct here amounts to an egregious abuse of government power.

### VI. State Law Claims

Plaintiff alleges that Defendants violated state laws, MDOC policies, and work rules. Plaintiff contends also that Defendant Westcomb is liable for the state-law torts of assault and medical negligence. Claims under § 1983 can only be brought for "deprivation of rights

13

secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law, MDOC policies, or work rules, therefore, fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's § 1983 claims for failure to state a claim will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss those claims without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: July 8, 2019                              /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE