UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN DEVON BRIGGS #447282,

        Plaintiff,

v.

UNKNOWN WESTCOMB, et al.,

        Defendants.
_____/

Case No. 2:19-cv-00105

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by Lt. Rondeau, who is one of the three defendants in the case. (ECF No. 28.) Rondeau asserts that Briggs failed to exhaust his administrative remedies.

State prisoner Kevin Devon Briggs filed this civil rights action pursuant to 42 U.S.C. § 1983 in May 2019. Briggs sues Physician Assistant (PA) Westcomb, Corrections Officer (CO) Barber and Lt. Rondeau. Briggs alleges in his verified complaint that, beginning in January of 2016, while he was incarcerated at the Alger Correctional Facility (LMF), Westcomb changed his insulin dosage, in violation of his Eighth Amendment rights, and that Barber and Rondeau retaliated against him by filing a false misconduct ticket for threatening behavior. (ECF No. 1, PageID.5.)

This Court dismissed this complaint on July 8, 2019. (ECF No. 5.) On March 10, 2020, the Sixth Circuit reversed the dismissal and remanded the case. (ECF No. 12.)

Lt. Rondeau's motion for summary judgment is fully briefed. (*See* ECF No. 28, 29 (motion and supporting brief), ECF No. 33 (Briggs's response), ECF No. 35 (Rondeau's reply).)

Briggs says that Lt. Rondeau retaliated against him when he submitted a false witness statement in support of a false misconduct ticket issued by CO Barber. A copy of the allegedly false statement by Lt. Rondeau is shown below.

> While on the SS Commons side of Cedar Unit on 1-26-16 at approx 0720 hours I could hear a Prisoner Yelling From The other side of The Commons, I looked over and observed PA Westcomb Hurrying out of the medical Room. I observed CO Barber Tell prisoner Briggs #447282 To Return To his Cell, Briggs was approx 1 foot or less From CO Barber. Briggs was screaming at CO Barber with clenched Fists "Why The Fuck u pressing up on Me? Wanna Do Something." CO Barber Remained Professional and Escorted Briggs To his Cell and Secured The Door.
>
> LT [signature]          1-27-16
> Staff Signature          Date

(ECF No. 29-19, PageID.275.)

The hearing officer in charge of the misconduct hearing on this ticket changed the charge from threatening behavior to insolence and found Briggs guilty. A review of the records associated with this ticket shows that Briggs did not assert that Lt. Rondeau's statement was retaliatory either during the misconduct hearing or in his request for a rehearing. In addition, Briggs did not pursue a grievance against Lt. Rondeau in which he argued that Rondeau retaliated against him.

The undersigned concludes that the evidence shows there is no genuine issue of material regarding whether Briggs exhausted his claim against Rondeau. Accordingly, the undersigned respectfully recommends that the Court grant Lt. Rondeau's motion for summary judgment and dismiss him from this action without prejudice.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

1    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

4

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that

5

clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy

Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and

---

and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

9

should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV. Plaintiff's Allegations

Plaintiff's remaining allegations are summarized in the table below.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Eighth Amendment deliberate indifference to Brigg's medical needs due to reducing insulin dosage. | Westcomb | January 19 to middle of March 2016 |
| 2 | Retaliation by submitting a false misconduct report. | Barber | January 25, 2016 |
| 3 | Retaliation by submitting a false Misconduct Witness Report statement to support the false misconduct report. | Rondeau | January 27, 2016 |

### V. Grievances Identified by Defendant Rondeau

In his motion for summary judgment, Defendant Rondeau identified a number of grievances that Gibbs filed with the MDOC. Rondeau claims that a review of these grievances will demonstrate that Gibbs has failed to exhaust his administrative remedies on his retaliation claim against him. These grievances are summarized below. The grievance that mentions Lt. Rondeau is highlighted in yellow.

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| LMF-16-09-2431-12e1 (ECF No. 29-4, PageID.177-181.) | Bedient, Parada, Cobb, Brennan, and Collin. | Failed to properly treat low blood sugar | 9-2-16 | Denied | Denied | Rejected as untimely |
| LMF-16-06-1713-12e (ECF No. 29-5, PageID.183-187.) | Bedient | Caused hostility in effort provoke due to low blood sugar | 6-11-16 | Denied | Denied | Denied |
| LMF-16-06-1562-12e3 (ECF No. 29-6, PageID.189-193.) | Crane | Denied insulin | 5-27-16 | Failed to comply with medical care | Denied | Denied |
| LMF-16-05-1226-12d4 (ECF No. 29-7, PageID.195-199.) | Shitt, Moser, Crane, Car, and Berhg. | Denied a glucometer | 4-25-16 | No need for a glucometer. | Denied. | Denied. |
| LMF-16-05-1389-12e1 (ECF No. 29-8, PageID.201-205.) | Berhg | Denied insulin | 5-6-16 | Denied | Denied | Denied |
| LMF-16-03-0886-17c (ECF No. 29-9, PageID.207-210.) | Seymour | Sexual harassment | 2-24-16 | Denied | Denied | Denied |
| LMF-16-03-0604-28a (ECF No. 29-10, PageID.212-216.) | Westcomb | Retaliation: harassment and denial of bottom bunk detail | 2-26-16 | Rejected as duplicative to LMF-1601-0173-12i1 | Rejection upheld | Rejection upheld |

11

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| LMF-16-02-0347-12e4 (ECF No. 29-11, PageID.218-222.) | Crane | Verbally assaulted in attempt to provoke | 2-2-16 to 2-3-16 | Denied | Denied | Denied |
| LMF-16-02-0310-12e3 (ECF No. 29-12, PageID.224-228.) | Crane | Denied use of unopened syringe for insulin | 2-1-16 | Denied | Denied | Denied |
| LMF-16-02-0311-12d3 (ECF No. 29-13, PageID.230-234.) | Westcomb | Used intimidating and humiliating language | 1-26-16 | Denied | Denied | Denied |
| LMF-16-02-0309-12e1 (ECF No. 29-14, PageID.236-240.) | Patrick and Sergeant John Doe | Denied medical treatment | 1-31-16 | Denied | Denied | Denied |
| LMF-16-02-0282-27a (ECF No. 29-15, PageID.242-246.) | Tried to verbally resolve issue with Rondeau. Grievance names Barber | Retaliation: Threatening and inappropriate physical contact and issued inaccurate report | 1-26-16 | Rejected because issue grieved is related to misconduct process | Rejection upheld | Rejection upheld |
| LMF-16-02-0326-28a (ECF No. 29-16, PageID.248-252.) | Barber | Physical assault | 1-26-16 | Rejected as duplicative to another grievance (other grievance was not identified) | Rejection upheld | Rejection upheld |

12

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| LMF-16-01-0178-12d3 (ECF No. 29-17, PageID.254-258.) | Westcomb | Denied appropriate insulin dosage | 1-19-16 | Dosage adjustment requirements were discussed with provider | Provider to meet with grievant before ordering dosage change. | Denied |
| LMF-16-01-0173-12i1 (ECF No. 29-18, PageID.260-264.) | Carr and Mouzer | Denied bottom bunk detail | 1-13-16 and 1-19-16 | Bottom bunk detail does not apply because he is in single bunk cell, encourage to send kite to healthcare | Denied | Denied |

## VI. Misconduct Appeals Identified by Defendants

Lt. Rondeau identified one misconduct ticket that Briggs received and one misconduct appeal that Briggs filed with the MDOC. This misconduct ticket is summarized below.

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| Misconduct issued by Barber | Threatening behavior misconduct ticket | 1-26-16 | 1-29-16 | Found guilty of insolence | Denied |

## VII. Analysis

Lt. Rondeau argues that Briggs failed to properly raise his retaliation claim during his misconduct hearing and in his request for reconsideration of the

13

misconduct decision. As an initial matter, the record indicates that Briggs declined to attend the January 29, 2016, hearing on the misconduct report. (ECF No. 29-19, PageID.268.) The hearing officer determined that Briggs was not guilty of threatening behavior and changed the charge to insolence. (*Id.*) Briggs did not assert during the hearing process that Defendant Lt. Rondeau retaliated against him. Briggs was found guilty of insolence. The hearing officer explained the reasons for his decisions as follows:

> EVIDENCE IN RECORD: (Unless otherwise noted, each listed document consists of one page.) Misconduct report, statement from Westcomb, Hearing Investigation Report, Misconduct Sanction Screening Form, statement from Rondeau, verification, prisoner's statement and questions (2) and two stills examined. The first still showed the prisoner in the clinic at 07 33 28. The second still showed the officer escorting the prisoner at 07 34 58. Hearing Officer viewed the videos from the time that the prisoner walked into the clinic until the time he walked into his cell. Prisoner did not have a clenched fist in the clinic. If he had a clenched fist on the wing, it was not seen on the video. Prisoner gestured with his hands but he kept his hands open as he spoke. Prisoner did not appear to be doing much listening but spoke constantly and became increasingly more agitated. When the PA left the room, the officer then walked over to the prisoner and walked with him out of the clinic. The officer walked out of the door before the prisoner and the officer was the one that maintained his position relative to the prisoner. As the prisoner started down the stairs, the officer briefly touched the prisoner's back as if to guide him down the stairs. At that time, Rondeau was at the head of the stairs.
>
> **REASONS FOR FINDINGS** Continued from Page One:
>
> INSOLENCE: On 1/26/16 the prisoner stated to the officer, "Why are you walking up on me like that? Like you gonna do something?" This statement was made to harass, degrade, and alarm the officer as there was no other purpose for his comment. Prisoner intended to harass, alarm and degrade the officer as the prisoner directed his comment to the officer when the officer was escorting the prisoner back to his cell. Prisoner admits that he did tell the officer, "Why are you walking up against me and touching me?" He claims, however, that he never clenched his fists and did not threaten the officer or the PA. Based on the prisoner's demeanor and their response to him, it is probable that both the PA and the officer felt threatened by the prisoner but it is not their feelings, but the prisoner's intent, that is at issue. According to the reporting staff member, the prisoner had clenched fists in the clinic and also when the prisoner confronted him about "walking up on me." If that had happened, this would demonstrate the prisoner's intent to cause fear of physical harm. The video, however, did not show it. It is possible that, when the prisoner's hands were down, due to the positioning of the prisoner's body relative to persons and things around him, the video did not capture it. The one thing that is certain, however, is that the prisoner never lifted up his fists in a threatening manner. Prisoner did a lot of hand waving and that may have been misinterpreted by others as they were watching him but his hands were not clenched in fists. The prisoner's words, in themselves, are not enough to sustain the charge. It could be possible to sustain the charge if there was a showing that the prisoner invaded the officer's zone of personal safety in anger but the prisoner did not move into the reporting staff member's zone of safety. It was the officer that was moving close to the prisoner. There is no doubt that the prisoner was insolent. It was not his place to reprimand the officer on the manner of escort. For that reason, this charge is being reduced to the lesser included charge of *Insolence*. Reporting staff member factual and is credible as to what occurred (other than the fist clenching) and supported by statements provided by other staff members and the video. Charge upheld.

(*Id.*, PageID.269.)

About three weeks later, on February 18, 2016, Briggs requested a rehearing. (*Id.*, PageID.267 (request), 271 (continuation of request).) Although, Briggs raised a

14

retaliation issue by asserting that CO Barber issued the misconduct ticket in retaliation, he did not assert a retaliation claim against Lt. Rondeau and did not even mention Rondeau in the request for reconsideration. In addition, Briggs did address PA Westcomb's witness statement in his request for reconsideration. The relevant portion of his request for rehearing is shown below:

> (38) "Employees shall submit accurate... written reports when required by Department policy or procedure.... Failure to provide reports that are accurate and complete as required by policy is a violation of this work rule." (47) "An employee shall not falsify... documents, including but not limited to,... misconduct reports.... Furthermore, This misconduct is written in retaliation by C/O Barber, in which witness Westcomb's statement confirms Mr.Briggs made C/O Barber aware that he will file a grievance against him and the P.A., this is also a violation of Department work rule #3"... Employees are prohibited from retaliating against a person because because the person has made a complaint, either orally or in writing,...". Moreover, C/O Barber caused Mr.Briggs to become alarmed and worried when this C/O walked up against him with his body and then touched Briggs physically multiple times while invading his zone of safety, which caused Mr. Briggs to ask C/O Barber, "Why are you walking up against me and touching?" This is not Insolence nor is it meant to harass, degrade, or alarm this C/O, But to inquire why he is violating Mr. Briggs and Department work rules. For these reasons Mr.Briggs is entitled to complete dismissal of the Threatening Behavior as well as the reduced lesser charge of Insolence. Also, Mr.Briggs Due Process rights have been violated, by the fact his questions were not presented to or answered as it pertains to all party's involved & witnesses, in which the record of testimony made at the hearing is inadequate for purpose of judicial review.
> Respectfully Submitted,
> Kevin D. Briggs Sr. #447282

(*Id.*, PageID.271.)

The record shows that Briggs failed to exhaust his retaliation claim against Lt. Rondeau during the misconduct hearing process and in his rehearing request.

Briggs argues that he exhausted his retaliation claim against Lt. Rondeau by filing grievance **LMF-16-02-0282-27a**. A review of that document indicates that

15

Briggs did not assert his retaliation claim against Lt. Rondeau in that grievance. The relevant portion of Briggs's Step I grievance is shown below.

> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 1/26/2016
> If none, explain why. I Requested to speak to a supervisor Lt. Rondo, whom told me to lock up, I'm leaving.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On January 26, 2016 C/o Barber Violated Department Work Rules # 1, 6, 13, 14, 38, & 47, When this C/o intentionally began walking up against grievant, his movement caused physical and mental Intimidation, Making Inappropriate physical contact of a threatening nature, Inappropriately placing his hand on grievant's lower back while walking against grievant going down A-wing stairs in cedar unit. C/o Barber's actions undermines and interferes with Department efforts to enforce rules, regulations, policies, & procedures. C/o Barber's actions detracted from maintaining order, in which this C/o then submitted an Inaccurate report to his supervising personnel. Furthermore, C/o Barber actions described herein were done in retaliation to grievant alerting C/o Barber he will be filing a grievance. As such, C/o Barber falsified a class I misconduct report against grievant placing him in Segregation. See also (i.e. P.D. 03.02.130(K) and P.D. 03.03.130 (I)(L)(S)(K)(4)).
> Grievant requests audio & video from Cedar Unit from 07:00hrs-08:00hrs be held for legal Purposes...
> Relief Requested: $1,000.00 - $1,500.00 per day for each day grievant spends in segregation as a result and transfer... "Misconduct Report Expunged". Kevin D. Briggs Sr.

(ECF No. 29-15, PageID.245.)

To summarize, Briggs only named Defendant Lt. Rondeau in the portion of the grievance that requires him to name the individual he spoke to attempt to resolve the issue. The body of the grievance asserts a claim against CO Barber, but not Lt. Rondeau. The grievance was rejected at each Step because it involved the misconduct hearing process.

Lt. Rondeau argues that under MDOC Policy Directive 03.02.130(F)(2)[4], Briggs could have filed a grievance asserting that Lt. Rondeau's statement was a

---

[4] That policy states that "Decisions made in hearings conducted by hearing officers . . . and issues directly related to the hearing process (e.g., sufficiency of

16

retaliatory act. (ECF No. 35, PageID.289.) Briggs never did so. The policy seems to contradict Defendant Lt. Rondeau's argument. Nevertheless, Brigg's did not raise an issue in a grievance concerning Lt. Rondeau's witness statement.

The record is clear that Briggs failed to exhaust his available administrative remedies against Defendant Lt. Rondeau before he filed this lawsuit. Briggs did not assert that Defendant Lt. Rondeau retaliated against him during the misconduct hearing or the rehearing process, and he did not file a grievance asserting that Defendant Lt. Rondeau took a retaliatory act against him.

### VIII.  Recommendation

The undersigned respectfully recommends that this Court grant Lt. Rondeau's motion for summary judgment and dismiss him from this lawsuit without prejudice due to Brigg's failure to exhaust his administrative remedies.

If the Court accepts this recommendation, Brigg's claims against PA Westcomb CO Barber will remain.

Dated:   August 2, 2021                           /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

---

witness statements . . .)" are non-grievable. If Lt. Rondeau is correct, all Brigg's needed to do to exhaust his claim was to file a grievance asserting that Lt. Rondeau's statement was retaliatory. This ignores both the policy language and the case law which requires prisoners to address retaliation claims relating to misconduct tickets and hearings during the misconduct hearing. It is recognized that the Lt. Rondeau made the correct legal argument in his motion for summary judgment. His reply brief argues that he should have filed a grievance under this policy. Nevertheless, if Brigg's did name Rondeau in a properly filed and exhausted on the merits grievance, this R&R would conclude that he exhausted his claims because the MDOC had waived a procedural policy.

17

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).