UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN DEVON BRIGGS #447282,    Case No. 2:19-cv-00105

    Plaintiff,    Hon.   Gordon J. Quist
                          U.S. District Judge

v.

UNKNOWN WESTCOMB, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

This Report and Recommendation (R&R) addresses summary judgment motions filed by Plaintiff and Defendants.  (ECF Nos. 45 (Plaintiff's motion), 62 (Defendant Westcomb's motion), and 64 (Defendant Barber's motion).)  Briggs has not responded to Defendants' motions for summary judgment.[1]

State prisoner Plaintiff Kevin Devon Briggs filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 30, 2019.  (ECF No. 1.)  He alleges that his rights were violated while he was confined at the Alger Correctional Facility (LMF).

---

[1]  The Michigan Department of Corrections' (MDOC's) Offender Tracking Information System (OTIS) indicates that Briggs was paroled on January 4, 2022.  https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=447282    (last visited Feb. 5, 2022).  The Court recently mailed an order to Briggs at the Michigan Reformatory, which is an MDOC Correctional Facility.  This piece of mail was not delivered and was returned to the Court.  (ECF No. 71.)  Briggs has not provided an updated address.

(*Id.*)  Plaintiff's verified complaint alleged denial of medical care and that he received a misconduct ticket in retaliation for his grievance.  (*Id.*)

Briggs sued Defendants Physician's Assistant (PA) Westcomb, Corrections Officer (CO) Barber, and Lieutenant Rondeau.  The Court initially dismissed the case in a screening opinion and order.  (ECF Nos. 5 and 6.)  The Sixth Circuit reversed the dismissal after concluding that the allegations in Briggs's complaint stated Eighth Amendment and First Amendment claims.  (ECF No. 12.)

Lt. Rondeau filed a motion to dismiss due to Briggs's failure to exhaust the retaliation claim asserted against him.  (ECF No. 28.)  The Court granted that motion and dismissed Lt. Rondeau from this case.  (ECF No. 55.)

The remaining claims are against PA Westcomb for failing to raise Briggs's insulin dosage after he experienced negative effects caused by the lowering of his dosage (ECF No. 12, PageID.70), and against PA Westcomb and CO Barber for issuing Briggs a retaliatory misconduct ticket because Briggs filed a grievance concerning his medical care (*id.*, PageID.72).

The medical records and evidence before the Court fail to establish genuine issues of fact regarding Briggs's remaining constitutional claims.  The medical record shows that Briggs was frequently non-compliant with his insulin medication and daily blood glucose monitoring.  Briggs was a difficult patient to manage and his failure to follow his medication schedule was the sole cause of any difficulties he experienced with his diabetic condition.  The Class I misconduct ticket that Briggs received on January 26, 2016, was due to his misbehavior in the healthcare unit and

2

while he was being escorted back to his cell from a medical appointment. Briggs had a full and fair hearing on the major misconduct ticket and appealed the decision. The hearing officer ultimately found Briggs not guilty of the major misconduct, but guilty of a lesser charge. The hearing officer's factual findings, which are preclusive in this case, lead to the conclusion that the misconduct ticket issued by CO Barber was not written in retaliation for grievances filed by Briggs, but, instead, was based on Briggs's misbehavior that day. Accordingly, in the opinion of the undersigned, Briggs's retaliation claim fails.

In summary, the undersigned finds that the evidence before the Court fails to establish genuine issues of material fact with regard to either of Briggs's claims. Accordingly, it is respectfully recommended that the Court deny Briggs's motion for summary judgment (ECF No. 45), grant Defendants' motions for summary judgment (ECF Nos. 62, 64), and dismiss this case.

**II. Factual Allegations**

The Sixth Circuit summarized Briggs's factual allegations as follows:

> Briggs is diabetic and requires insulin. He was prescribed an insulin dosage of 48 units but, from January 13-18, 2016 he was sick, so he did not take his full dose each day. On January 19, when he went to get his morning dose of insulin, Briggs was informed that his dosage had been reduced to no more than 40 units. Briggs was informed that Westcomb, a physician assistant at the facility, had reduced his morning, midday, and evening dosages of insulin. Briggs then requested to speak with Westcomb to increase his insulin dosage, but he was not able to do so. That same day, he filed a grievance against Westcomb alleging "deliberate indifference and [a] violation [of] [Michigan Department of Corrections] Policy and Operating Procedures." A week later on January 25, Westcomb's supervisor spoke to her about her having lowered Briggs's insulin dosage. The next day, Westcomb and Barber—a correctional officer—"ambushed" Briggs together and tried to provoke

> him into committing misconduct. Westcomb verbally attacked Briggs, and Barber "became physical" with Briggs. Barber was "touching and bumping up against" Briggs. Briggs requested help from Lieutenant Rondeau, a more senior correctional officer. Rather than intervening to help Briggs, Rondeau told Briggs that he was "going to the hole." Briggs was then taken to the segregation unit.
>
> Based on this incident, Barber filed a misconduct report against Briggs, accusing him of threatening behavior. Rondeau provided a witness statement as part of Barber's report. On January 29, Briggs was found not guilty of threatening behavior, but guilty of a lesser offense. He was awarded loss of privileges for thirty days. Months later, on April 20, Barber admitted to Briggs that the misconduct report was false and that "[Rondeau] told him to write that false misconduct report."
>
> Briggs continued at the lower, 40-unit dosage of insulin until the middle of March, when a medical doctor intervened and increased his morning insulin dosage to 50 units. The doctor also increased his midday and evening dosages. From January 19 to mid-March, the lower dosage of insulin caused Briggs to have high blood sugar levels, which in turn caused him to suffer from "cysts, constant urinating, and kidney pain." Prior to the doctor's intervention to raise the insulin dosage, Briggs had "complained for months of ill effects" caused by the dosage being too low.

(ECF No. 12, PageID.66-67.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV.   Deliberate Indifference

Briggs and PA Westcomb both move for summary judgment on Briggs's Eighth Amendment claim.  The Sixth Circuit framed the remaining Eighth Amendment issue as "not that his insulin dose was lowered, but that Westcomb did not *increase* his dosage after becoming aware that he was suffering from negative effects caused by the lower dosage and that she intended to cause him unnecessary pain and suffering by refusing [to] the raise dosage."   (ECF No. 12, PageID.70.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.   U.S. Const. amend. VIII.   The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).   The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.   *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   To satisfy the

5

objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that **delay in medical treatment** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition adequately**, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner.

7

> Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The medical records show that Briggs was frequently noncompliant with his insulin medication and his regular Accu-chek readings.[2] (ECF No. 62-2, (affidavit

---

[2] Accu-chek is a brand name of a company that provides blood glucose monitoring products. (https://www.accu-chek.com)

9

of PA Westcomb).)  Blood sugar levels are checked by daily Accu-chek readings to determine the correct amount of insulin that is needed each day.  (*Id.*, PageID.560.) The goal was to have readings between 70-150.  (*Id.*)  A1C levels measure the average blood sugar over a two-to-three-month period and are not sufficient to monitor daily blood levels.  (*Id.*)  Without daily Accu-chek readings, it was difficult to monitor Briggs's blood sugar levels and to determine the amount of insulin he needed each day.  (*Id.*)

Briggs frequently refused to take his insulin while he was confined at the Chippewa Correctional Facility in 2015 (ECF No. 62-1, PageID.422, 424, 432, 435, 436), and Briggs self-adjusted his insulin to take less than prescribed. (*Id.*, PageID.437.)  This behavior continued after Briggs transferred to LMF, where PA Westcomb began treating Briggs in January of 2016.  Briggs refused Accu-chek daily monitoring of his blood glucose level.  (*Id.*, PageID.438, 447, 455.)  Briggs took less than the prescribed amount of daily insulin or refused to take his insulin.  (*Id.*, PageID.439, 440, 442-445, 449-453, 457.)

On January 19, 2016, PA Westcomb conducted a chart update and because Briggs self-adjusted his insulin doses by taking less than the prescribed amount, she decreased his dosage.  (*Id.*, PageID.459.)  Briggs continued to frequently refuse to take his insulin medication or Accu-chek daily monitoring of his blood glucose level. (*Id.*, PageID.463, 465, 468, 471, 473, 475-477, 480, 482-484, 489, 491-494, 498, 501 503, 505-508, 510, 512, 514, 525.)

10

On March 15, 2016, Briggs met with Dr. Bonefield. (*Id.*, PageID.540-544.) Dr. Bonefield noted that Briggs refused to allow nurses to have his Accu-chek results, but he shared them with Dr. Bonefield. Dr. Bonefield increased Briggs's insulin dosage noting:

> **Comments**
> - patient has been refusing to give accuchecks to nursing but has reviewed them with me- because he feels a previous provider lowered his insulin too much without discussing with him. The a1c and accuchecks do seem to confirm that his insulin needs to be increased-
>     he is advised we can't increase him to 48 and 38 in one fell swoop due to MDOC policy- he is in agreement with this.
>     Plan:To titrate insulin upward.

(*Id.*, PageID.542.) Again, however, the medical records show that Briggs refused to take his prescribed insulin on March 19 and 21 of 2016. (*Id.*, PageID.553-554.) The medical records presented to the court end on March 26, 2016. (*Id.*, PageID.556.)

The record fails to show that PA Westcomb was deliberately indifferent to Briggs's medical needs. The record shows that PA Westcomb continuously monitored Briggs's blood glucose levels when Briggs allowed and prescribed him an appropriate dosage of insulin. The record shows that Briggs was a difficult patient who refused to cooperate with nursing staff. Any failures to properly monitor and regulate his blood glucose levels were solely due to Briggs's noncompliance with his medications and his plan of treatment. Thus, the undersigned concludes that the evidence fails to establish a genuine issue of material fact with respect to Briggs's Eighth Amendment claim against PA Westcomb. In the opinion of the undersigned, PA Westcomb should be dismissed from this action.

### V. Retaliation

Briggs argues that the Class I misconduct ticket that he received from CO Barber for threatening behavior was in retaliation for a grievance that he made against PA Westcomb.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

Briggs had a medical appointment with PA Westcomb on January 26, 2016. PA Westcomb asked CO Barber to sit in on the appointment. (ECF No 65-3, PageID.631 (affidavit of CO Barber).) Briggs was hostile as the appointment began and was clearly upset with PA Westcomb. (*Id.*) Briggs asked CO Barber to leave the room, but CO Barber decided that he should not leave PA Westcomb alone with Briggs at that time. (*Id.*) Briggs argued with PA Westcomb about changing his medication, but he would not allow PA Westcomb to address his concerns. (*Id.*) CO Barber then decided to escort Briggs back to his cell. Briggs stopped and said: "why are you walking up on me like that, like you gonna do something." (*Id.*) CO Barber says that Briggs made this statement in a threatening manner and with clenched fists. (*Id.*) CO Barber says that he was unaware of the grievance that Briggs wrote against PA Westcomb at the time he issued the misconduct, nor did he have any concerns about any grievance that Briggs may have filed. (*Id.*, PageID.632.)

First, the factual record supports the conclusion that CO Barber issued the misconduct solely because of Briggs's behavior while he was being escorted back to his cell. Second, after a major misconduct hearing, Briggs was found guilty and that finding has preclusive effect.

A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). However, as the

13

Sixth Circuit subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual finding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916-17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05.

In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit further clarified the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013) (internal citation and quotation marks omitted).

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403-04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.

14

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404-05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id.* at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id.* The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id.* at 405.

*Maben*, 887 F. 3d at 259.

After a hearing, which Briggs refused to attend, Briggs was found guilty of the reduced charge of insolence and not guilty of threatening behavior. The hearing officer explained the findings:

> INSOLENCE: On 1/26/16 the prisoner stated to the officer, "Why are you walking up on me like that? Like you gonna do something?" This statement was made to harass, degrade, and alarm the officer as there was no other purpose for his comment. Prisoner intended to harass, alarm and degrade the officer as the prisoner directed his comment to the officer when the officer was escorting the prisoner back to his cell. Prisoner admits that he did tell the officer, "Why are you walking up against me and touching me?" He claims, however, that he never clenched his fists and did not threaten the officer or the PA. Based on the prisoner's demeanor and their response to him, it is probable that both the PA and the officer felt threatened by the prisoner but it is not their feelings, but the prisoner's intent, that is at issue. According to the reporting staff member, the prisoner had clenched fists in the clinic and also when the prisoner confronted him about "walking up on me." If that had happened, this would demonstrate the prisoner's intent to cause fear of physical harm. The video, however, did not show it. It is possible that, when the prisoner's hands were down, due to the positioning of the prisoner's body relative to persons and things around him, the video did not capture it. The one thing that is certain, however, is that the prisoner never lifted up his fists in a threatening manner. Prisoner did a lot of hand waving and that may have been misinterpreted by others as they were watching him but his hands were not clenched in fists. The prisoner's words, in themselves, are not enough to sustain the charge. It could be possible to sustain the charge if there was a showing that the prisoner invaded the officer's zone of personal safety in anger but the prisoner did not move into the reporting staff member's zone of safety. It was the officer that was moving close to the prisoner. There is no doubt that the prisoner was insolent. It was not his place to reprimand the officer on the manner of escort. For that reason, this charge is being reduced to the lesser included charge of *Insolence*. Reporting staff member factual and is credible as to what occurred (other than the fist clenching) and supported by statements provided by other staff members and the video. Charge upheld.

15

(ECF No. 29-19, PageID.269.)   Briggs appealed the guilty decision, but his appeal was denied.   (*Id.*, PageID.266.)

In the opinion of the undersigned, the misconduct hearing findings have a preclusive effect on this litigation because the hearing officer acted in a judicial capacity in a class I misconduct hearing (a major misconduct) and resolved factual disputes.   The hearing officer's findings regarding the incident on January 26, 2016 eliminate a genuine issue of fact with respect to the confrontation between Briggs, Barber and Westcomb.   The hearing officer concluded that "[t]here is not doubt that the prisoner was insolent.   It was not his place to reprimand the officer on the manner of escort." (*Id*, PageID.269.)   In contrast, Briggs asserts, in his verified complaint (ECF No. 1, PageID.6) that CO Barber and PA Westcomb "ambushed" him and tried to provoke him, that Barber was the physical aggressor and that he (Briggs) maintained his composure.   As shown above, the hearing officer did not agree with these assertions.   Furthermore, Barber attested that he "wrote the ticket because of Briggs's behavior during and immediately after the healthcare visit and not as a means of retaliating against Briggs for filing a grievance."   (ECF No. 65-3, PageID.632.)

If the undersigned were simply considering Briggs's verified complaint against the assertions in the affidavits provided by Barber and Westcomb, the undersigned would conclude that a genuine issue of fact remained with respect to Briggs's retaliation claim.   But in this case, a hearing officer in a Class I misconduct hearing has invalidated Briggs's account.   This finding, combined with the statements in the

16

affidavits provided by Barber (ECF No. 65-3) and Westcomb (ECF No. 62-2) lead the undersigned to conclude that no genuine issue of fact remains with regard to Briggs's retaliation claim.

Under these circumstances, Briggs's retaliation claim based on events on January 26, 2016, should be dismissed.

### VI. Recommendation

In summary, the undersigned finds that the evidence before the Court fails to establish genuine issues of material fact with regard to either of Briggs's claims. Accordingly, it is respectfully recommended that the Court deny Briggs's motion for summary judgment (ECF No. 45), grant Defendants' motions for summary judgment (ECF Nos. 62, 64), and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   February 7, 2022                                           /s/ *Maarten Vermaat*
                                                                                      MAARTEN VERMAAT
                                                                                      U.S. MAGISTRATE JUDGE